27 C.C.P.A. (Patents)

## ELSE v. McCORMACK.
### Patent Appeal No. 4296.

Court of Customs and Patent Appeals.
June 24, 1940.

O. H. Eschholz and W. R. Coley, both of East Pittsburgh, Pa. (Loyd H. Sutton and Gordon W. Daisley, both of Washington, D. C., of counsel), for appellant.

George H. Strickland, of Dayton, Ohio (Edwin S. Dybvig, of Dayton, Ohio, of counsel), for appellee.

Before BLAND, Acting Presiding Judge, and HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences awarding priority of the invention defined in the two counts in issue to appellee, Alex A. McCormack.

The interference is between appellant's patent No. 2,053,425, issued September 8, 1936, on an application filed February 23, 1934, and appellee's application No. 644,841, filed November 29, 1932.

It will be observed that the applications of the parties were copending in the Patent Office from the filing date of appellant's application—February 23, 1934—to the issuance of his patent—September 8, 1936.

The invention relates to a lubricating system for electric motors, and particularly for the type of motor designed to operate the fan of a refrigerating device. In the lubricating system of each of the involved parties, the lubricant is sealed within a reservoir which is so designed and constructed as to retain the lubricant, regardless of whether the motor is tilted or inverted from its normal position during shipment or in the handling of it prior to installation. The reservoir is designed to hold a sufficient supply of lubricant to last during the "lifetime" of the motor.

In the disclosure of each of the parties, one end of the motor shaft extends into the lubricant reservoir, and the issue in the case relates to means for preventing the escape of the lubricant from the opposite end of the motor shaft; that is, as stated in count 1, "means for preventing the escape of lubricant from the end of the shaft to which the motor rotor is connected," or, as stated in count 2, "means for preventing the escape of lubricant from the overhanging end of the drive shaft."

The counts originated in appellant's patent. They read:

"1. In a motor, a frame structure, bearing means provided in the frame structure, a drive shaft supported by the bearing and extending outwardly of one end of the frame structure, a motor stator mounted on the frame structure, a motor rotor operatively connected to the outwardly extending portion of the drive shaft for driving the same, sealing means cooperating with the frame structure for providing a lubricant reservoir at the opposite end of the drive shaft, and means for preventing the escape of lubricant from the end of the shaft to which the motor rotor is connected.

"2. In a motor for driving a device, a frame structure, bearing means provided in the frame structure, a drive shaft supported by the bearing means, a motor stator mounted on the frame structure, a motor rotor operatively connected adjacent one end of the drive shaft for driving the same, said drive shaft overhanging the frame structure at the rotor end for driving the device, means forming with the frame structure a sealed lubricant reservoir at the opposite end of the drive shaft, and means for preventing escape of lubricant from the overhanging end of the drive shaft."

During the motion period, appellant, the junior party, moved to dissolve the interference on the ground that appellee had no right to make the claims constituting the counts in issue, it being contended by appellant that appellee's application does not disclose "means for preventing the escape of lubricant from the end of the shaft to which the motor rotor is connected," called for in count 1, or "means for preventing the escape of lubricant from the overhanging end of the drive shaft," called for in count 2.

During the normal operation of the structures of the parties, appellant's motor shaft is in a horizontal position and appellee's is in a vertical position.

For the purpose of clarity, we reproduce figure 1 of the drawings in appellant's

patent, and figures 1 and 2 of the drawings in appellee's application.

In appellant's patent it is stated that "In order to aid in preventing oil moving

### Figure 1, Appellant's Patent.

WITNESSES

INVENTOR

Harry D. Else

BY

ATTORNEY

### Figures 1 and 2 of Appellee's Application.

Fig. 1

Fig. 2

axially toward the fan assembly I may provide a plurality of individual grooves or a helical groove 87 within the right-hand end of central hub 11 as is shown more particularly in Fig. 1 of the drawings."

So that appellee's structure, as disclosed in figures 1 and 2 of his drawings, may be better understood, we quote the following from his application: "A motor embodying features of my invention includes, in general, a stator 10, a rotor 11, a drive shaft member 13, a bearing member 14 for said drive shaft member and a lubricant well 15. The drive shaft member 13, when a motor is associated with a refrigerating system or the like, is provided with a fan or blower 16 which creates a forced draft."

It will be observed that, as stated in the brief of counsel for appellant, figures 1 and 2 of appellee's drawings disclose an "inverted cone shaped chamber or recess cut into the end of the bearing assembly, and a cup-shaped cap member closing the upper end of this chamber but having a central opening therein through which the shaft [13] extends upwardly to its connections with the motor rotor and the fan," and it is those elements disclosed in his drawings upon which appellee relies for his disclosure of means for preventing the escape of lubricant from the end of the motor shaft, as called for in each of the counts in issue.

Neither the "cone-shaped chamber" nor the "cup-shaped cap member" disclosed in appellee's drawings bear any reference characters, nor were they referred to in appellee's specification. However, for the purpose of clarity, we have indicated the "cone-shaped chamber" by the reference character "A" and the "cup-shaped cap member" by the reference character "B" on appellee's hereinbefore reproduced drawings.

In his decision, the Primary Examiner referred to an affidavit of appellee, which is in the record, and stated that—

" * * * McCormack has submitted evidence in the form of an affidavit by himself, *stating that he made a device like that shown in Fig. 2 of his application*

"omitting the inverted cup-shaped member and cone-shaped chamber at the top of the porous bearing. The operation of such structure was unsatisfactory, due to the fact that oil was absorbed by the porous bearing and drained over the top thereof into the compartment containing the stator and the rotor."

"He states that he then added the feature omitted in the above-mentioned test and escape of oil was prevented.

*"It is thus seen that the issue is one involving the operativeness of the McCormack device in the manner alleged.*

"The burden of proving that the device of McCormack is inoperative rests upon the moving party, Williams v. Handschiegl, 410 O.G. 817, 1931 C.D. 423, Id., 48 F.2d 395, 18 C.C.P.A., Patents, 1176, 1181.

"It is not seen that he has sustained that burden. The motion is accordingly denied." (Italics ours.)

In his decision, the Examiner of Interferences stated that as appellant, the junior party, had failed to submit any evidence "within the time allowed for that purpose priority of invention of the subject matter in issue is hereby awarded to Alex A. McCormack, the senior party."

In its decision, the Board of Appeals, in referring to the "cone-shaped chamber" and the "cup-shaped cap member" in appellee's drawings, said:

"The upper end of the bearing member [14] and the adjacent support therefor is divergent with respect to the shaft to form a cup of inverted cone shape. The upper end of this cup is closed by a disk-shaped cap member which, as shown, *contacts the shaft at its inner periphery.*

"It is the examiner's view that the construction just referred to satisfies the counts with respect to the means for preventing the escape of lubricant. The means shown is generally of the same character as that described by Else, especially where annular grooves are used. Else says nothing with respect to the necessity of having a very close fit of the grooved element with respect to the shaft nor with respect to the number of grooves which would be necessary to serve his purpose. *We think it obvious that a single member which closely embraces the shaft would serve the stated purpose to the necessary degree in a construction such as shown by McCormack, where the motor shaft is normally disposed in an upright position.* In the Else construction, where the motor shaft is intended to be used in a horizontal position, the problem would be greater and a more efficient means for preventing the escape of oil might be necessary. *In our opinion the means shown by McCormack, even though not described, is thought to be inherently capable of*

*functioning in a manner to satisfy the requirements of the counts."* (Italics not quoted.)

It will be observed that the Primary Examiner quoted from appellee's affidavit and stated in his decision that the issue involves "the operativeness of the McCormack device in the manner alleged," that is, "in the manner alleged" in appellee's affidavit. No other inference could be drawn from the examiner's. decision, because, as hereinbefore noted, appellee made no reference in his application to either the "cone-shaped chamber" or the "cup-shaped cap member."

■ The issue raised by appellant's motion to dissolve the interference is whether *appellee's application,* not his affidavit, discloses the invention defined in the counts in issue, and particularly whether the "cone-shaped chamber" and the "cup-shaped cap member," disclosed in figures 1 and 2 of the drawings in appellee's application, satisfy the counts with respect to the means for preventing the escape of lubricant from the end of the motor shaft.

■ There being no description of either the "cone-shaped chamber" or the "cup-shaped cap member" and no statement of their function in appellee's specification, the question presented is whether either or both of those elements will inherently function as means for preventing the escape of lubricant from the end of the motor shaft. See Hansgirg v. Kemmer, 102 F.2d 212, 26 C.C.P.A.,. Patents, 937, 940, and cases therein cited.

■ Appellee states in his application that the bearing member 14, disclosed in figure 2 of his drawings, "may be made of any of the well-known porous metal graphite materials," and that such a bearing member will absorb a sufficient quantity of lubricant to maintain the necessary lubrication between the bearing member and the drive shaft.

It is argued by counsel for appellee that as the bearing member 14 is porous, and as a refrigerator motor operates intermittently, but very little oil would reach the "cup-shaped cap member" and that such as did reach it would be diverted into the "cone-shaped chamber" and either be reabsorbed by the porous bearing member or returned by the force of gravity to the lubricant reservoir when the motor ceased to operate.

As hereinbefore noted, the Board of Appeals stated in its decision that the "cup-shaped cap member" is shown in the drawing to be in contact with the motor shaft 13 "at its inner periphery," and, although counsel for appellant argue, and properly so, that there must of necessity be some clearance between the "cup-shaped cap member" and the shaft so that the latter can rotate, it would seem to be clear from figures 1 and 2 of appellee's drawings that the "cup-shaped cap member" is in as close contact with the motor shaft as is the porous bearing member 14.

The record contains an affidavit of J. L. Brown, an employee of the Westinghouse Electric & Manufacturing Company (appellant's assignee). The affidavit was submitted with appellant's motion to dissolve the interference. It appears therefrom that the affiant Brown has devoted many years "to working on the design and manufacture of various parts of dynamo-electric machines, including bearings, in the Industrial Motor Engineering Department and its predecessors"; that during that period of time he made a number of inventions relating to bearings and dynamo-electric machines; that he examined the disclosure in figures 1 and 2 of appellee's drawings, and that, in his opinion, "the inverted cup-shaped member (unnumbered) which surrounds the shaft member and overhangs the upper end of the hub would not perform" the function of preventing the escape of lubricant from the end of the shaft to which the motor rotor is connected. Mr. Brown further stated in his affidavit that the cup-shaped cap member was composed of a single sheet of metal, and that it had been "known for many years that such a structure, *by itself,* fails to prevent the escape or spread of lubricant, since it is nothing more than a narrow bearing and, therefore, the lubricant will form the usual film between it and the shaft and flow or spread beyond it." (Italics ours.)

It will be observed that Mr. Brown did not refer in his affidavit either to the "cone-shaped chamber" or to the fact that the bearing member in appellee's structure is porous in character. He was of opinion, however, that the "cup-shaped member," "by itself," would not prevent the' escape or spread of the lubricant from the end of the shaft.

So, we are confronted here with the opinion of Mr. Brown that the "cup-shaped

member," "by itself," would not prevent the escape of the lubricant from the end of the motor shaft, and the statements in the affidavit of appellee that the "cup-shaped cap member" *and* the "cone-shaped chamber" had been tried out by him and that the combination actually did prevent the escape of the lubricant from the end of the motor shaft.

We are not advised, either by anything of record or by the briefs of counsel for the parties, whether the "cone-shaped chamber" and the "cup-shaped cap member," disclosed in figures 1 and 2 of appellee's drawings, could serve any purpose in appellee's structure other than that claimed by counsel for appellee, that is, the prevention of the escape of lubricant from the end of the motor shaft, as called for by the counts in issue.

We have given careful consideration to the arguments forcefully presented here by counsel for appellant, but are of opinion, as was the Board of Appeals, that appellee's "cup-shaped cap member" and the "cone-shaped chamber," disclosed in figures 1 and 2 of his drawings, will inherently function, particularly in the structure disclosed in figure 2, as means for preventing the escape of lubricant from the end of the motor shaft, as called for by the counts in issue.

The decision of the Board of Appeals is affirmed.

Affirmed.

GARRETT, Presiding Judge, took no part in the consideration or decision of this case.